IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED

2012 DEC -4 AM 11: 09

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12cv1261 |
| | ) | |
| TONEY FIELDS and TRUMEKIA | ) | |
| SHAW, individually and doing | ) | |
| business as FIELDS MO' MONEY | ) | |
| TAXES, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff, the United States of America, alleges against Defendants, Toney Fields and

Trumekia Shaw, individually and doing business as Fields Mo' Money Taxes, as follows:

1. This is a civil action brought by the United States under sections 7402(a), 7407, and

7408 of the Internal Revenue Code (26 U.S.C.) ("I.R.C.") to permanently enjoin Defendants

Toney Fields and Trumekia Shaw, and anyone in active concert or participation with them, from:

    (a)    acting as federal tax return preparers or requesting, assisting in, or
directing the preparation or filing of federal tax returns, amended returns,
or other related documents or forms for any person or entity other than
themselves;

    (b)    preparing or assisting in preparing federal tax returns that they know or
reasonably should have known would result in an understatement of tax
liability or the overstatement of federal tax refund(s) as penalized by
I.R.C. § 6694;

    (c)    falsifying or fabricating Forms W-2 or any other IRS form, filing false or
fabricated Forms W-2 or any other IRS form, or aiding and abetting with
the falsification or fabrication of or filing of false or fabricated Forms W-2
or any other IRS form;

(d)     preparing or assisting in preparing federal tax returns that are based on end-of-year pay stubs rather than proper employer-issued Forms W-2;

(e)     engaging in any other activity subject to penalty under I.R.C. §§ 6694, 6695, 6701, or any other penalty provision in the I.R.C.; and

(f)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

## Jurisdiction and Venue

2. This action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to the provisions of I.R.C. §§ 7402, 7407, and 7408.

3. Jurisdiction is conferred on this Court by Sections 1340 and 1345 of Title 28, United States Code, and I.R.C. § 7402(a).

4. Venue is proper in this Court under 28 U.S.C. § 1391 because Toney Fields and Trumekia Shaw do business as Fields Mo' Money Taxes, which has its principal place of business at 2700 Gallatin Pike, Suite D, Nashville, Tennessee 37216, and a substantial part of the actions giving rise to this suit took place in this district.

## Defendants' Activities

5. Fields is a commercial tax return preparer doing business as Fields Mo' Money Taxes in Nashville, Tennessee. Fields has owned and operated Fields Mo' Money Taxes since 2009. Fields previously worked as a file clerk at a Mo' Money Taxes office in Memphis for approximately five years, then as a tax return preparer for Mo' Money Taxes for two years, before opening his own Mo' Money Taxes office in Nashville.

6. Shaw is a commercial tax return preparer doing business as Fields Mo' Money Taxes in Nashville, Tennessee. Shaw is the girlfriend of Fields, and she is frequently identified as

2

Trumekia Fields on the tax returns that she prepares.

7. Fields has been a licensee of Mo' Money Taxes LLC and MoneyCo USA LLC, both located in Memphis, Tennessee, and executed license agreements with Markey Granberry, an owner of Mo' Money Taxes LLC and MoneyCo USA LLC. Granberry provided Fields with a $50,000 loan, with no interest or written agreement, to operate Fields Mo' Money Taxes. The loan was used to pay for rent, advertising, and computers. The operating account for Fields Mo' Money Taxes at Regions Bank was held jointly in the name of Granberry and Fields until Fields repaid the loan, at which point Shaw's name was substituted for Granberry's.

8. According to Fields, he and Shaw each prepare approximately half of the tax returns filed using the Electronic Filing Identification Number (EFIN) registered to Fields Mo' Money Taxes.

9. In 2009, 2010, and 2011, Fields Mo' Money Taxes prepared 1,320; 1,218; and 1,131 federal income tax returns, respectively, as identified by the IRS, based on returns filed using the EFIN registered to Fields Mo' Money Taxes. The percentage of these tax returns that claimed a refund ranged from 99 percent in 2009 to 100 percent in 2010 and 2011, extraordinarily high rates, particularly considering the large volume of returns. The percentage of returns claiming the Earned Income Tax Credit ranged from 84 percent in 2009 and 2011 to 94 percent in 2010, an unusually high percentage of returns claiming that credit.

10. The IRS has completed examinations of 41 federal tax returns prepared and filed using the EFIN registered to Fields Mo' Money Taxes in 2011. These examinations revealed a 100 percent error rate on these returns with an average tax deficiency of $4,501.25. Improprieties included false filing statuses, bogus Schedule A expenses, claiming ineligible

3

dependents, bogus child tax credits, and false Earned Income Tax Credits. Additional examinations are ongoing.

11. Based on the 100 percent error rate and the average tax deficiency of $4,501.25 per return of the completed examinations for returns prepared in 2011, the Defendants' tax return preparation could have resulted in revenue losses of over $5 million to the United States from the 1,131 returns prepared in 2011 alone.

<b>Earned Income Tax Credit Fraud</b>

12. The Earned Income Tax Credit (EITC) is a refundable tax credit available to certain low-income individuals. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. The requirements for claiming the EITC are set forth in I.R.C. § 32 and the accompanying Treasury Regulations.

13. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

14. Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and $12,550, and decreases as income increases beyond $16,400. Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot." For example, for tax year 2010, the maximum EITC was $5,666 and was available to

4

eligible individuals with three dependent children who earned income between $12,550 and $16,400.

15. Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset income and manipulate the total income to fall within the "sweet spot" allows customers to receive a larger refundable credit. The Defendants are falsifying information to claim the maximum EITC for their customers.

16. Unscrupulous tax return preparers like the Defendants exploit the rules by claiming on their customers' returns bogus dependents and/or by reporting phony Schedule C businesses and income. In order to bring the taxpayer's reported earned income within the "sweet spot" for the EITC, and depending on a taxpayer's actual income, the Defendants may inflate or fabricate Schedule C income to fraudulently increase a taxpayer's reported earned income, or claim bogus Schedule C deductions to fraudulently decrease a taxpayer's reported earned income.

17. For example, Toney Fields prepared the 2010 federal income tax return of customer Timothy Davis of Madison, Tennessee. Fields falsely claimed two dependents on Davis's return, a niece and a step-daughter, who was falsely identified as a daughter on the return. In fact, these two individuals did not qualify as dependents. The customer file for Davis that the Defendants maintained does not contain any documentation regarding the relationship between Davis and the two claimed dependents. Additionally, the purported daughter was 26 in 2010, and there is no documentation showing that she was disabled. By claiming these bogus dependents, Fields improperly increased Davis's EITC by $3,050, and thereby claimed an improper refund for Davis in the amount of $6,289.

5

18. Trumekia Shaw prepared the 2010 federal income tax return of customer Curtis Stanford of Madison, Tennessee. Shaw falsely claimed three dependents on Stanford's return. In fact, Stanford had no qualifying dependents in 2010. By falsely claiming these dependents, Shaw improperly claimed the maximum EITC in the amount of $5,666 on Stanford's return. Shaw also falsely claimed a child tax credit in the amount of $1,000 based on the bogus dependents. Additionally, Shaw falsely reported Stanford's filing status as head of household rather than single. As a result of Shaw's bogus EITC and child tax credit claims, Shaw improperly claimed a refund in the amount of $8,114 on Stanford's tax return. Rather than being due a refund, Stanford actually owed $1,538 in tax, plus additional interest and penalties based on Shaw's false claims on Stanford's return.

19. Similarly, Shaw prepared the 2010 federal income tax return of customer Isedro Lucio of Madison, Tennessee. Shaw falsely claimed two dependents on Lucio's return. Shaw falsely told Lucio that he could claim these purported dependents. In fact, Lucio had no qualifying dependents in 2010. By falsely claiming these dependents, Shaw improperly claimed an EITC in the amount of $5,036 on Lucio's return, and an improper child tax credit in the amount of $1,596. As a result of Shaw's bogus EITC and child tax credit claims, Shaw falsely claimed a refund in the amount of $7,861 on Lucio's tax return. Rather than being due a refund, Lucio actually owed $2,024 in tax, plus additional interest and penalties based on Shaw's false claims on Lucio's return.

20. Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate

6

the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." *See* 26 C.F.R. § 1.6695-2 (2010). Tax return preparers must also document their compliance with these requirements and keep that documentation for three years. *Id.*

21. To document compliance with the due diligence requirements, tax return preparers must complete either the "Paid Preparer's Earned Income Credit Checklist" (Form 8867) or record and maintain other documentation verifying customer eligibility for the EITC.

22. The only due diligence that the Defendants conduct is having their customers complete or sign three forms specific to Mo' Money Taxes: a taxpayer personal information sheet, a filing status and EITC eligibility form, and a refund explanation form. The Defendants' software program requires that they also complete the IRS Form 8867 Paid Preparer's Earned Income Credit Checklist. The Defendants, however, complete these forms without any verification or documentation supporting the responses or claims recorded.

23. For example, Fields prepared the 2010 federal income tax return of customer Shirley Green of Fayetteville, Tennessee. On the return, Fields claimed three dependents: a niece, a son, and a daughter, all of whom have different last names than Green. The customer file that the Defendants maintain for Green contains no documentation showing (a) the relationship between Green and the claimed dependents, (b) that the dependents lived with Green in 2010, or (c) that Green supported the dependents. One of the claimed dependents was over 18 in 2010, but there is no documentation in the file showing that the dependent was a full-time student or

7

permanently and totally disabled, as is required to claim the EITC as to that person. Fields also reported that Green received $12,432 in wages, when in fact Green received $11,851. By falsely reporting additional wages, Fields was able to increase the EITC on Green's return and improperly increase her tax refund.

24. The Defendants' conduct shows an intentional disregard for the tax laws and in particular for the due diligence requirements under I.R.C. § 6695(g), and demonstrates their unwillingness to comply with the requirements. Not only do the Defendants fail to adhere to the due diligence requirements, but they are falsifying information in order to maximize the EITC for their customers.

### Charitable Contribution and Employee Business Expense Fraud

25. The Defendants often prepare tax returns for customers on which they fraudulently inflate or completely fabricate the amount of a customer's charitable contribution and make false claims for purported business expenses that were not incurred or do not qualify for deduction under the Internal Revenue Code.

26. Section 170 of the Internal Revenue Code (the "Code") governs charitable contributions. Section 170(a) provides that qualifying charitable contributions, as defined by I.R.C. § 170(c), are allowable only if verified. The Defendants prepare returns for customers that report a fraudulently inflated amount of contributions.

27. Section 162 of the Code governs trade or business expenses. The Defendants prepare returns for customers that claim deductions for bogus, fraudulently inflated, or non-qualifying business expenses. IRS Publication 529 provides examples of qualifying business expenses, including "Union dues and expenses" and "Work clothes and uniforms if required and

8

not suitable for everyday use." *See* IRS Publication 529 (2009) (available online at: http://www.irs.gov/publications/p529/ar02.html). Publication 529 also provides examples of expenses that do <u>not</u> qualify as business expenses, including "Commuting expenses," "Lunches with co-workers," "Meals while working late," and "Personal, living, or family expenses."

28. For example, Fields prepared the 2009 and 2010 federal income tax returns of customer Deborah Reed of Nashville, Tennessee. Reed provided Fields with only her Form W-2, an interest statement, and statement for the mortgage interest and real estate taxes that she paid. On the Schedules A attached to Reed's 2009 and 2010 tax returns, Fields claimed false charitable contribution deductions in the amounts of $6,300 and $5,500, respectively. Reed made no such contributions and did not inform Fields that she made these contributions.

29. Fields also claimed grossly inflated and undocumented unreimbursed employee business expenses on Reed's 2009 and 2010 tax returns in the amounts of $13,345 and $9,568, respectively. Reed, a nurse, was asked about possible expenses, and told Fields that any expenses she had for uniforms were not significant and that she had no receipts. Reed did not provide any amounts to Fields, and Fields fabricated the unreimbursed employee business expenses he claimed on Reed's returns. Fields did not review the tax returns with Reed before they were filed, and Reed, not being familiar with taxes and trusting that Fields - a professional tax return preparer - properly prepared her returns, did not review the tax returns herself.

30. Additionally, Fields reported inflated home mortgage interest expenses on Reed's 2009 and 2010 tax returns. Reed gave Fields Forms 1098 showing that Reed paid mortgage interest in the amounts of $618 in 2009 and $557 in 2010. Fields falsely reported on Reed's tax returns that she paid $2,311 and $5,570 in mortgage interest in 2009 and 2010, respectively. As

9

a result of the corrections made to her tax returns, upon IRS audit Reed owed an additional $4,337 and $3,849 in tax for 2009 and 2010, respectively, plus interest.

**Improperly Preparing and Filing Returns based on Pay Stubs and Fabricating Forms W-2**

31. The Defendants improperly prepare and file federal income tax returns using customers' end-of-year pay stubs. The Defendants create bogus Forms W-2 based on the amounts reported on those pay stubs, and then file the customers' tax returns without valid Forms W-2.

32. Using pay stubs to prepare and file tax returns is improper and violates IRS rules. Moreover, end-of-year pay stubs frequently omit income and distributions that are shown on employer-issued Forms W-2. Thus, preparing and filing federal income tax returns based on information from end-of-year pay stubs inevitably results in errors and omissions on federal tax returns, which necessarily interferes with the administration and enforcement of the internal revenue laws.

33. The Defendants open their business on or around December 26 of each year, before the end of the tax year, before customers know how much income they earned and taxes they owe for the year, and before employers are able to issue Forms W-2 to their employees. By preparing tax returns before the end of the tax year, the Defendants unfairly solicit business before their competitors.

34. The Defendants have their customers fill out a taxpayer personal information sheet specific to Mo' Money Taxes, which identifies the customer's name, address, social security number, and dependent information, as well as MoneyCo USA company forms, such as a "Product Disclosure" form for the company's refund anticipation loan program. The customers

10

often complete these forms in December or early January, and because their employers have not yet issued Forms W-2, the Defendants use the customers' most recent pay stub to prepare a tax return and create a fake Form W-2.

35. For example, Trumekia Shaw prepared the 2011 federal income tax return of customer Karema Bogan of Nashville, Tennessee, an employee at Burger King. The return is signed and dated by Bogan and Shaw on December 16, 2011, more than two weeks before the end of the 2011 tax year, long before any Form W-2 for 2011 could be issued by Burger King. Despite not having a Form W-2, which could include additional income Bogan received in December 2011, Shaw reported that Bogan received $20,619 in wages. However, IRS records show that Bogan actually received $21,181 in wages from Burger King in 2011.

36. Shaw also prepared the 2011 federal income tax return of customer Markham Bounds of Nashville, Tennessee. The return is signed and dated by Bounds and Shaw on December 29, 2011. Shaw reported that Bounds received $36,041 in wages in 2011. However, IRS records from an employer-issued Form W-2 show that Bounds actually received $34,747 in wages in 2011. Thus, the return prepared by Shaw, before the end of the year and based on a pay stub, incorrectly reported that Bounds received $1,294 more in taxable income than he actually received, which may have harmed Bounds by causing him to pay more tax than he actually owed.

37. The Defendants also fabricate bogus Forms W-2 for their customers based on the customer's most recent pay stub. A taxpayer may have more than one Form W-2 if they have more than one job. Each employer will issue its own Form W-2 to the taxpayer. The Defendants often create two bogus Forms W-2, purportedly issued by two different employers, on a single

11

sheet of paper. The Defendants then separate the two fabricated Forms W-2 by cutting along a dotted line. Placing the two Forms W-2 together, it is apparent from that they were cut from the same sheet of paper. In some instances, the two Forms W-2 - again, purportedly issued by two separate and distinct employers - are not even separated and are retained in the customer's file as a single-page document. Using paystubs, which typically do not disclose EINs, to create bogus electronic Forms W-2s that frequently report false EINs constitutes outright fraud and is a serious obstruction to tax administration.

38. For example, Toney Fields fabricated Forms W-2 in connection with his preparation of the 2010 federal income tax return of customer Timothy Davis. Davis filled out a taxpayer information sheet and a MoneyCo USA Product Disclosure form on December 27, 2010. Fields prepared a tax return dated January 2, 2011. Fields fabricated two Forms W-2, purportedly issued to Davis by BF Nashville Inc., of Nashville, Tennessee, and Shoneys, of Madison, Tennessee, on a single sheet of paper, based on Davis's pay stubs from these companies. BF Nashville Inc. and Shoneys would not issue Forms W-2 together on a single sheet of paper. Fields then cut the sheet of paper in two to give the false appearance that these two Forms W-2 were issued separately. Interestingly, the bogus Forms W-2 report whole number and no cents, while typical Forms W-2 report both dollars and cents.

39. The bogus Form W-2 from Shoneys reported "4262" dollars in wages. IRS records from an employer-issued Form W-2 show that the correct wages Davis received from Shoneys in 2010 was $4,317. Furthermore, the Employer Identification Numbers (EINs) reported on the bogus Forms W-2 for BF Nashville Inc. and Shoneys are different from their actual EINs.

40. Fields also fabricated Forms W-2 in connection with his preparation of the 2010

12

federal income tax return of customer Shirley Green. Green filled out a taxpayer information sheet, a MoneyCo USA Consent to Use of Tax Return Information form, and a MoneyCo USA Product Disclosure form on December 28, 2010. Fields prepared a tax return dated January 3, 2011. Fields fabricated a Form W-2 purporting to be from McDonalds of Fayettville [sic], located in Fayetteville, Tennessee, reporting wages of $12,432, which Fields in turn reported on line 7 of the Form 1040 tax return. The genuine Forms W-2 later filed by Green's employers show that Green received wages from McDonalds Restaurants of Tennessee Inc., located in Oak Brook, Illinois, in the amount of $11,390 and that Green also received wages in the amount of $461 from Wal-Mart Associates Inc.

41. Similarly, Fields fabricated Forms W-2 in connection with his preparation of customer Niesha Greer's 2010 federal income tax return, which was dated January 11, 2011. Fields prepared two bogus Forms W-2 on the same sheet of paper - which he did not even cut into two separate forms - from two different employers, Harpeth Financial Services of Nashville, Tennessee, and Cajun Operating Company of Atlanta, Georgia. The counterfeit Form W-2 for Cajun Operating Company claimed that Greer received $5,474 in wages. In fact, Greer received $6,240 in wages from Cajun Operating Company.

42. Fields also prepared the 2010 federal income tax return for customer Baron Garrett of Nashville, Tennessee, signed and dated January 3, 2011. Fields fabricated three Forms W-2 based on Garrett's paystubs from Anchor Tours, YMCA of Nashville & Middle Tennessee, and an employer referred to on the bogus Form W-2 only as "Payroll Dept," showing wages in the amounts of $3,835; $2,470; and $12,039. The bogus Forms W-2 for Anchor Tours and the YMCA were cut from the same sheet of paper. IRS records from employer-issued Forms W-2

13

show that Garrett received wages of $3,835 from Anchor Tours, $2,469 from the YMCA, and $11,633 from the Metropolitan Board of Education in Nashville, Tennessee. Based on these amounts, it is probable that the wages reported on the bogus Form W-2 from "Payroll Dept" are those from the Metropolitan Board of Education, although the amounts reported do not match, nor do the EINs. Moreover, the actual EIN for Anchor Tours Inc. does not match the EIN reported on the bogus Form W-2 that Fields created. Additionally, IRS records show that Garrett received wages from Carman Ainsworth Community School in Flint, Michigan and unemployment compensation from the State of Tennessee which Fields did not report on Garrett's tax return.

43. The fake Forms W-2 Trumekia Shaw fabricates often do not include the customer's correct employer and often misspell the name of the customer's employer that purportedly issued the Form W-2. For example, Shaw prepared the 2010 federal income tax return of customer Linda Rhodes of Nashville, Tennessee. Shaw fabricated two Forms W-2 on a single sheet of paper, both listing "Exxon Mobile" (misspelled with an "e") as the employer, and wages of "7800" and "7049" on the two forms. Rhodes actually received income from Exxon Mobil Business Support Center, which reported to the IRS wages of $7,799, and LF Nashville Acquisition LLC, which reported to the IRS wages of $7,048.

44. Similarly, Shaw prepared a 2010 federal income tax return for Jacques Gooch, for which she fabricated a Form W-2 from Gooch's employer, which Shaw also misspelled as "Exxon Mobile." Gooch's 2010 tax return was signed and dated January 3, 2011, before a Form W-2 would have even been issued by Gooch's employer, particularly considering that January 1 and 2, 2011 were a Saturday and Sunday.

14

45. Shaw also prepared a 2010 federal income tax return for customer Brittany Griffin, which did not include Griffin's name on the front page of the return. Shaw created two fake Forms W-2, purportedly issued by Prozidence [sic] Community and McDonalds, on the same sheet of paper, which Shaw did not even cut into two separate Forms W-2. The fraudulent nature of the Forms W-2 is further apparent because the street addresses for both Prozidence Community and McDonalds were listed as "JDHDH Memphis, TN 38115." IRS records from employer-issued Forms W-2 show that Griffin received wages from Providence Community Services Inc., located in Pottsville, Pennsylvania, and Century Management LLC, located on Murray Road in Memphis, Tennessee. The wages that Griffin received from Providence Community Services, Inc. matched the wages reported on the bogus Form W-2 listing "Prozidence Community" as the employer, while the wages that Griffin received from Century Management LLC were one dollar less than those reported on the bogus Form W-2 listing McDonalds as the employer.

46. Additionally, Griffin's tax return was prepared electronically, and hand-signed by Griffin and Shaw. The electronic date next to Shaw's signature is listed as February 27, 2012, while the handwritten date next to Griffin's signature is January 4, 2011. The Form 8879 IRS e-file Signature Authorization allowing MoneyCo USA to electronically file Griffin's tax return is also electronically signed by "MoneyCo USA - Trumekia Shaw" on January 4, 2011. It is highly unlikely that Griffin's employers would have issued Forms W-2 for tax year 2010 before January 4, 2011.

47. The customer files that the Defendants maintained for customers Karema Bogan and Markham Bounds for the 2011 tax year contain purported Forms W-2 claiming that Bogan

15

received $20,619 from Burger King and that Bounds received $36,041 from Interstate Brands when, as discussed above, those are not the actual wages that they received and which would have been reported on a true Form W-2 issued by those employers.

48. Defendants had reason to know that using pay stubs to prepare and file returns violates the law because, in order to participate in the IRS's electronic filing program, all tax preparation company owners must acknowledge that they will comply with the IRS's documentation and due diligence requirements, which expressly prohibit filing returns prepared with pay stubs and without genuine Forms W-2.

49. The Defendants also suborned perjury by having their customers attest under penalty of perjury on the Form 1040 tax return and the attached Forms 8879 IRS e-file Signature Authorization that the customers had reviewed their tax return and accompanying schedules and statements and, to the best of the customers' knowledge, those documents were "true, correct, and complete," when in fact that was not possible because the customers did not yet have legitimate Forms W-2 and the tax return that the Defendants prepared was, by its nature, not true and complete because it was based on pay stubs and fabricated Forms W-2.

### Harm Caused by Defendants

50. The Defendants' customers have been harmed to the extent they paid the Defendants fees to prepare proper tax returns, but the Defendants prepared returns that substantially understated their correct tax liabilities. Many customers now face large income tax deficiencies and may be liable for sizeable penalties and interest.

51. The Defendants' conduct harms the United States because their customers are under-reporting and under-paying their correct tax liabilities. So far, the IRS has completed

16

examinations of 41 federal income tax returns that the Defendants prepared in 2011, all of which contained errors, with an average tax deficiency of $4,501.25 per return. Based on the 100 percent error rate and the average tax deficiency, the Defendants' tax return preparation may have resulted in revenue losses of over $5 million to the United States from the 1,131 returns prepared in 2011 alone.

52. In addition to the direct harm caused by preparing tax returns that understate customers' tax liabilities, the Defendants' activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

53. The Defendants further harm the United States because the Internal Revenue Service must devote its limited resources to investigating the Defendants, identifying the Defendants' customers, ascertaining their correct tax liabilities, recovering any refunds erroneously issued, and collecting any additional taxes and penalties.

### Count I
### Injunction under I.R.C. § 7407

54. The United States incorporates by reference the allegations in paragraphs 1 through 53.

55. Section 7407 of the I.R.C. authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under I.R.C. § 6694 or § 6695, or engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, if the court finds that the preparer has engaged in such conduct and that injunctive relief is appropriate to prevent the recurrence of the conduct. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court

17

further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer.

56. Fields and Shaw have continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous, and reckless positions.

57. Fields and Shaw have continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6695. The Treasury regulations promulgated under I.R.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6995-2 (2010).

58. Fields's and Shaw's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard of IRS rules and regulations.

59. Fields and Shaw have continually and repeatedly prepared federal income tax returns that claim the EITC for customers where Fields and Shaw have not conducted, let alone documented, the required due diligence procedures.

60. Fields's and Shaw's continual and repeated violations of I.R.C. §§ 6694 and 6695 fall within I.R.C. § 7407(b)(1)(A), and thus are subject to an injunction under I.R.C. § 7407.

61. Fields's and Shaw's continual and repeated fraudulent or deceptive conduct that

18

substantially interferes with the proper administration of the internal revenue laws, including preparing federal income tax returns based on pay stubs and fabricating Forms W-2, falls within I.R.C. § 7407(b)(1)(D), and thus is subject to an injunction under I.R.C. § 7407.

62. If they are not enjoined from all tax preparation, Fields and Shaw are likely to continue to prepare and file false and fraudulent tax returns.

63. Fields's and Shaw's continual and repeated conduct subject to an injunction under I.R.C. § 7407, including their continual and repeated fabrication of expenses and deductions, demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Fields's and Shaw's interference with the proper administration of the internal revenue laws. Thus, they should be permanently barred from acting as tax return preparers.

## Count II
### Injunction under I.R.C. § 7408

64. The United States incorporates by reference the allegations in paragraphs 1 through 63.

65. Section 7408 of the I.R.C. authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either I.R.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

66. Section 6701(a) of the I.R.C. penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability.

67. Fields and Shaw prepare federal tax returns for customers that they know will

19

understate their correct tax liabilities, because Fields and Shaw knowingly prepare returns claiming bogus expenses and deductions and based on fabricated Forms W-2. Fields's and Shaw's conduct is thus subject to a penalty under I.R.C. § 6701.

68. If the Court does not enjoin Fields and Shaw, they are likely to continue to engage in conduct subject to penalty under I.R.C. § 6701. Fields's and Shaw's preparation of returns claiming improper expenses and deductions is widespread over many customers and tax years. Injunctive relief is therefore appropriate under I.R.C. § 7408.

### Count III
### Injunction under I.R.C. § 7402(a)
### Necessary to Enforce the Internal Revenue Laws

69. The United States hereby incorporates by reference the allegations in paragraphs 1 through 68.

70. Section 7402 of the I.R.C. authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

71. Fields and Shaw, through the actions described above, including intentionally understating their customers' tax liabilities, fabricating Forms W-2, preparing and filing tax returns based on fabricated Forms W-2, and suborning perjury with respect to their customers' attestation that they reviewed true, correct, and complete copies of their tax returns, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

72. Unless enjoined, Fields and Shaw are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Fields and Shaw are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer

20

irreparable injury by wrongfully providing federal income tax refunds to individuals not entitled to receive them.

73. While the United States will suffer irreparable injury if Fields and Shaw are not enjoined, Fields and Shaw will not be harmed by being compelled to obey the law.

74. Enjoining Fields and Shaw is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Fields's and Shaw's illegal conduct and the harm it causes the United States.

75. The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

WHEREFORE, the United States of America prays for the following:

A. That the Court find that Toney Fields and Trumekia Shaw have continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694 and 6695, and have continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B. That the Court, pursuant to I.R.C. § 7407, enter a permanent injunction prohibiting Toney Fields and Trumekia Shaw from acting as federal tax return preparers;

C. That the Court find that Toney Fields and Trumekia Shaw have engaged in conduct subject to penalty under I.R.C. § 6701, and that injunctive relief under I.R.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D. That the Court find that Toney Fields and Trumekia Shaw have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is

21

appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity

powers and I.R.C. § 7402(a);

E. That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter a permanent

injunction prohibiting Toney Fields and Trumekia Shaw, and all those in active concert or

participation with them, from:

(1)    acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(2)    preparing or assisting in preparing federal tax returns that they know or reasonably should have known would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by I.R.C. § 6694;

(3)    falsifying or fabricating Forms W-2 or any other IRS form, filing false or fabricated Forms W-2 or any other IRS form, or aiding and abetting with the falsification or fabrication of or filing of false or fabricated Forms W-2 or any other IRS form;

(4)    preparing or assisting in preparing federal tax returns that are based on end-of-year pay stubs rather than Forms W-2;

(5)    engaging in any other activity subject to penalty under I.R.C. §§ 6694, 6695, 6701, or any other penalty provision in the I.R.C.; and

(6)    engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F. That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter an order

requiring Toney Fields and Trumekia Shaw to contact, within fifteen days of the Court's order,

by United States mail and, if an e-mail address is known, by e-mail, all persons for whom they

prepared federal tax returns or claims for a refund for tax years 2008 through 2011 to inform

them of the permanent injunction entered against them, including sending a copy of the order of

22

permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

G. That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter an order requiring Toney Fields and Trumekia Shaw to produce to counsel for the United States, within fifteen days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom they prepared federal tax returns or claims for a refund for tax years beginning in 2008 and continuing through this litigation;

H. That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Toney Fields and Trumekia Shaw to provide a copy of the Court's order to all of their principals, officers, managers, employees, and independent contractors within fifteen days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Fields and Shaw provided a copy of the Court's order;

I. That the Court retain jurisdiction over Toney Fields and Trumekia Shaw and over this action to enforce any permanent injunction entered against them;

J. That the United States be entitled to conduct discovery to monitor Toney Fields's and Trumekia Shaw's compliance with the terms of any permanent injunction entered against them; and

23

K. That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: December __3__ , 2012

JERRY E. MARTIN
United States Attorney

DANIEL A. APPLEGATE
JAMES C. STRONG
ANN REID
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-8180
Fax: (202) 514-6770
Daniel.A.Applegate@usdoj.gov

24